UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JASKARAN SINGH,

        Petitioner,

   v.

CHESTNUT, et al.,

        Respondents.

No. 1:26-cv-0332-WBS-CSK

MEMORANDUM AND ORDER DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING AND PRELIMINARY INJUNCTION

----oo0oo----

Petitioner, a citizen of India, entered the United States unlawfully on October 1, 2023, was briefly taken into custody by Department of Homeland Security ("DHS") officials, and subsequently released under supervisory conditions. (Docket No. 1 at 1.) He alleges that when he appeared for a routine ICE check-in on November 16, 2025, as instructed, without any warning or explanation, he was arrested and taken into custody without being accused of any crime, violation of supervision conditions or failure to comply with ICE requirements. (Id. at 2.)

1

On January 16, 2026, petitioner filed the instant motion for temporary restraining order seeking immediate release from custody.  (See Docket No. 2-1.)  The court held oral argument in the matter on January 21, 2026, at which petitioner's counsel stated that petitioner's only claims were that his detention violates the procedural and substantive protections conferred by the Due Process Clause.  The parties also stipulated at oral argument to convert petitioner's motion for temporary restraining order into a motion for preliminary injunction.

I.    Temporary Restraining Order and Preliminary Injunction

"The standard for a [temporary restraining order] is the same as for a preliminary injunction." Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1092 (N.D. Cal. 2012) (citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001)).  Typically, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  The last two factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009).

Likelihood of success on the merits is "the most important factor in determining whether a preliminary injunction is warranted." Garcia v. County of Alameda, 150 F. 4th 1224, 1230 (9th Cir. 2025) (internal citations and quotation marks

omitted).  "[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this extraordinary remedy."  Earth Island Inst. v. Carlton, 626 F.3d 462, 469 (9th Cir. 2010) (internal quotation omitted).  A mere possibility of success is insufficient to satisfy this factor; instead, a petitioner must demonstrate "a strong likelihood of success on the merits."  Save Our Sonoran, Inc. v. Flowers, 408 F. 3d 1113, 1120 (9th Cir. 2005).

II.  Discussion

This case, like the dozens of substantially similar cases this court has adjudicated in the last few months, "involves [the] pressing national problem . . . [of] unlawful aliens residing in our country," Certain Named & Unnamed Non-Citizen Child. & Their Parents v. Texas, 448 U.S. 1327, 1331 (1980).  The Supreme Court has long "noted" the "dimensions" of this "problem."  I.N.S. v. Delgado, 466 U.S. 210, 223 (1984) (Powell, J., concurring).  Indeed, in 1984, then-recent estimates placed the number of unlawful noncitizens residing in the United States between 2 and 12 million, see id.; the government estimates that number has increased to "at least 15 million people" as of last year, Noem v. Vasquez Perdomo, 146 S. Ct. 1, 1 (2025) (Kavanaugh, J., concurring).

Additionally, prior to 1996, "an 'anomaly' existed 'whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully.'"  Chavez v. Noem, 801 F. Supp. 3d 1133, 1140 (S.D. Cal. 2025) (quoting Torres v. Barr, 976 F. 3d

3

918, 928 (9th Cir. 2020)).  Specifically, the provisions of the Immigration and Nationality Act ("INA") were structured such that "non-citizens who had entered without inspection could take advantage of the greater procedural and substantive rights afforded in deportation proceedings, while non-citizens who presented themselves at a port of entry for inspection were subjected to more summary exclusion proceedings."  Hing Sum v. Holder, 602 F.3d 1092, 1100 (9th Cir. 2010).

Against this troubled backdrop, Congress enacted the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA").  See Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996).  IIRIRA "substantially amended the Immigration and Nationality Act of 1952 ('INA') and established a new summary removal process for adjudicating the claims of aliens who arrive in the United States without proper documentation."  Smith v. U.S. Customs & Border Prot., 785 F. Supp. 2d 962, 965 (W.D. Wash. 2011), aff'd, 741 F.3d 1016 (9th Cir. 2014) (quotations omitted). Relevant here, IIRIRA provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission," 8 U.S.C. § 1225(a)(1), and that such "applicant[s] for admission" are subject to mandatory detention, id. § (b)(2)(A).  Thus, among other things, "IIRIRA amended the INA to make admission, not entry, the relevant criterion for removal procedures," Garibay-Robledo v. Noem, No. 1:25-cv-177-H, 2025 WL 3264482, at *4 (N.D. Tex. Sept. 15, 2025), putting an end to the above-described "anomaly," Chavez, 801 F. Supp. 3d at 1140.

4

"For many years" after the enactment of IIRIRA, "the understanding — shared by the Executive and the Supreme Court — was that [8 U.S.C. §] 1226, not [8 U.S.C. §] 1225, governed immigration arrests conducted within the interior of the United States." Bernal v. Albarran, No. 25-cv-09772 RS, 2025 WL 3281422, at *5 (N.D. Cal. Nov. 25, 2025). The government endeavored to correct this understanding on July 8, 2025, when the Departments of Homeland Security ("DHS") and Justice issued a policy memorandum "requiring all 'applicants for admission' . . . to be mandatorily detained during removal proceedings pursuant to [8 U.S.C.] § 1225(b)(2)." Garcia v. Noem, --- F. Supp. 3d ----, 2025 WL 2549431, at *1 (S.D. Cal. Sept. 3, 2025) (citation omitted). This memorandum further clarified that such noncitizens were "ineligible" for "bond hearing[s] before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS." Id. (citation modified). The Board of Immigration Appeals ("BIA") "subsequently" adopted DHS' new approach in a "reasoned opinion" concluding that "the practice of conducting bond hearings for aliens who entered the United States without inspection was not supported by the plain language or any reasonable interpretation of the INA." Liang v. Almodovar, No. 1:25-cv-09322 MKV, 2025 WL 3641512, at *4 (S.D.N.Y. Dec. 15, 2025) (citation modified); see Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) (BIA decision).

DHS was entitled to change its interpretation of 8 U.S.C. § 1225 as it did last July. Cf. Encino Motorcars, LLC v.

Navarro, 579 U.S. 211, 221 (2016) ("Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change."). Indeed, this change appears to have been precipitated by circumstances which made it a practical necessity. Approximately two months before issuing the policy memorandum, DHS noted that a "mass influx of aliens" was occurring, and that "[w]ithout controls in place . . . to stem the influx," it would "lose[] its capacity to hold all aliens as required by the INA." Finding a Mass Influx of Aliens, 90 Fed. Reg. 13622, 13623 (Mar. 25, 2025) (citing 8 U.S.C. § 1225(b)). This influx "present[ed] urgent circumstances requiring an immediate federal response," id., and the policy memorandum issued shortly thereafter served precisely the function called for by those circumstances.

This court has repeatedly found that the government's new interpretation of 8 U.S.C. § 1225 comports with that statute's plain text, whereas petitioner's interpretation (i.e. the government's prior interpretation) does not. See, e.g., J.E.P.M v. WOFFORD, et al., No. 1:26-cv-00316 WBS CKD, 2026 WL 125270, at *2 (E.D. Cal. Jan. 16, 2026) (collecting this court's such cases). 8 U.S.C. § 1225(b)(2)(A) requires mandatory detention of "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."

A neighboring provision, 8 U.S.C. § 1225(a)(1), clarifies that "[a]n alien present in the United States who has

not been admitted ... shall be deemed for purposes of this Act an applicant for admission." The term "admission" is in turn defined "with respect to an alien" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." Id. § 1101(a)(13)(A) (emphasis added). The inclusion of the word "lawful" in the foregoing definition is critical: it expressly clarifies that an individual may only be considered "admitted" to the United States if their presence therein is with permission.

This definition comports with the plain meaning of the word "admit," which is defined in Merriam-Webster's Dictionary as "to allow entry (as to a place, fellowship, or privilege)." Admit, Merriam-Webster, https://www.merriam-webster.com/dictionary/admit (last visited Feb. 3, 2026) (emphasis added). To construe the statute otherwise -- "that the mandatory detention provision of 1225 categorically does not apply to aliens who are present in the United States as a result of their illegal entry into the country" -- would "fl[y] in the face of defined statutory text" and contravene the plain meaning of the word "admit." See Chen v. Almodovar, No. 1:25-cv-8350 MKV, 2025 WL 3484855, at *5 (S.D.N.Y. Dec. 4, 2025) (emphasis added).

By contrast, 8 U.S.C. § 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained" pending their final removal decision. "Thus, one express requirement to fall within § 1226(a) — and the critical one here — is that the alien was arrested on a warrant issued by

7

the Attorney General." Vargas Lopez, 802 F. Supp. 3d 1132, 1139 (D. Neb. 2025).  Further, pursuant to the Laken Riley Act, subsection (c) of 8 U.S.C. § 1226 was amended to mandate detention for specific categories of noncitizens who have been charged with certain crimes.  See 8 U.S.C. § 1226(c)(1)(E); Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (Jan. 29, 2025) (Laken Riley Act).

The term "applicant for admission" in 8 U.S.C. § 1225 "functions as a legal designation -- describing an individual's legal status for purposes of the removal scheme." Alonzo v. Noem, No. 1:25-cv-01519 WBS SCR, 2025 WL 3208284, at *4 (E.D. Cal. Nov. 17, 2025) (collecting cases).  And petitioner is subject to this legal designation because he is an "alien," 8 U.S.C. § 1225(a)(1), who is "present in the United States," id., and who "has not been admitted," id., since his entry into the United States was not a "lawful entry . . . after inspection and authorization by an immigration officer," id. § 1101(a)(13)(A). See Mejia Olalde v. Noem, No. 1:25-cv-00168 JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025).  Petitioner may not "elide[]" this legal designation as an "'applicant for admission' merely because he has already entered the United States." Alonzo, 2025 WL 3208284, at *4; see also Chen, 2025 WL 3484855, at *4 (same conclusion).

Any reliance to the contrary on Jennings v. Rodriguez, 538 U.S. 281 (2018), is misplaced.  Jennings did not declare unequivocally that 8 U.S.C. § 1225 does not apply in cases such as petitioner's.  Rather, the Supreme Court stated that 8 U.S.C.

8

§ 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" the more specific categories of § 1225(b)(1).  Jennings, 583 U.S. at 287; see also Vargas Lopez, 802 F. Supp. 3d at 1142 ("The Court concludes that the plain language of § 1225(b)(2) and the 'all applicants for admission' language of Jennings permit the DHS to detain [petitioner] under § 1225(b)(2).")  Moreover, the Court's introductory language in Jennings dispenses with any remaining doubt by clarifying that "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'"  Id.

This court's interpretation of 8 U.S.C. § 1225 also does not render the Laken Riley Act superfluous.  First, "Congress often takes a 'belt and suspenders' approach to legislation."  Mejia Olalde, 2025 WL 3131942, at *4 (quoting Atl. Richfield Co. v. Christian, 590 U.S. 1, 14 n.5 (2020)).  Second, the Laken Riley Act was passed before DHS adopted its new interpretation of 8 U.S.C. § 1225; thus, the Act could not have intentionally captured that interpretation because it did not yet exist.  Third, and regardless, DHS' current interpretation of the phrase "applicant for admission" as it appears in 8 U.S.C. § 1225 does not render the Act superfluous because "[t]he Attorney General may still exercise her detention discretion under § 1226(a) for any other aliens falling under that subsection who are not charged with the specific crimes carved out by" the Act.  Chavez, 801 F. Supp. 3d at 1141.

"[A]n administrative agency is permitted to change its

interpretation of a statute, especially where the prior interpretation is based on error, no matter how longstanding." Chisholm v. F.C.C., 538 F.2d 349, 364 (D.C. Cir. 1976). That is precisely what occurred here. For the above reasons, the court again concludes that 8 U.S.C. § 1225 applies to petitioner.

That being the case, as the Supreme Court has declared and as this court has previously explained, "the procedure authorized by Congress" in 8 U.S.C. § 1225(b)(1)(B)(ii) constitutes procedural "due process" as far as petitioner is concerned. Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953); see also Angov v. Lynch, 788 F.3d 893, 898 (9th Cir. 2015) (for noncitizen who "never technically 'entered' the United States," "procedural due process is simply whatever the procedure authorized by Congress happens to be." (citation modified)); Grigoryan v. Barr, 959 F.3d 1233, 1241 (9th Cir. 2020) (same). And because 8 U.S.C. § 1225(b)(1)(B)(ii) does not "say[] anything whatsoever about bond hearings," petitioner is not entitled to one. Jennings, 583 U.S. at 297.

At oral argument, upon significant prompting by the court, petitioner's counsel also claimed that plaintiff's detention violated substantive due process because it "shock[ed] the conscience." The Supreme Court's cases "have repeatedly emphasized that only the most egregious official conduct can be said to" violate substantive due process. Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (citation modified). As such, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may

10

fairly be said to shock the contemporary conscience." Johnson v. Brown, 567 F. Supp. 3d 1230, 1251 (D. Or. 2021) (citing Lewis, 532 U.S. at 847 n.8 (1998)).

The court may decide the "issue of law" of whether alleged conduct "shocks the conscience" based on the undisputed facts. Cotta v. Cnty. of Kings, 79 F. Supp. 3d 1148, 1179 (E.D. Cal. 2015) (O'Neill, J.) (collecting cases), aff'd in part, rev'd in part, 686 F. App'x 467 (9th Cir. 2017); see also City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 753 (1999) (Souter, J., concurring in part and dissenting in part) (Substantive due process claims are "routinely reserved without question for the court.").

To prevail on such a claim, petitioner must overcome a high bar. By way of example, the Supreme Court has found that the "forced pumping of a suspect's stomach" shocks the conscience, see Lewis, 523 U.S. at 846 (citing Rochin v. California, 342 U.S. at 165, 209-10 (1952)), as does subjecting students to corporal punishment, see Ingraham v. Wright, 430 U.S. 651 (1977) (citing Rochin).

The court does not doubt that petitioner's counsel sincerely thinks petitioner's detention is conscience-shocking. But what matters is not petitioner's counsel's subjective belief, because whether conduct shocks the conscience consists of an "objective" inquiry that involves "the circumstances of [each] particular case." Roberts v. Bell, 281 F. Supp. 3d 1074, 1085 (D. Mont. 2018). Considering the conduct the Supreme Court identified as conscience-shocking in Lewis and Ingraham, it would

11

be ludicrous to lump the circumstances of petitioner's detention here into the same category as the facts of those cases.

For the above reasons, petitioner has failed to demonstrate a likelihood of success on the merits of his procedural and substantive due process claims.  Thus, the court "need not consider the other preliminary injunction factors." California v. Azar, 911 F.3d 558, 575 (9th Cir. 2018).

III. Conclusion

It bears reiterating once more that Congress has given DHS the very difficult task of ensuring that the millions of aliens who are unlawfully within the United States are detained and removed as prescribed by law.  It is not the court's role to "judge the wisdom or desirability" of how DHS fulfills that mandate.  Cf. Heller v. Doe by Doe, 509 U.S. 312, 319 (1993). The methods and procedures by which noncitizens are detained undoubtedly involve intricate details which the courts lack the Constitutional authority or practical resources to dictate.

IT IS THEREFORE ORDERED that petitioner's motion for a temporary restraining order and preliminary injunction (Docket No. 2) be, and the same hereby is, DENIED.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262, the case is referred to the assigned magistrate judge for further proceedings.

Dated:  February 3, 2026

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

12